IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL A. CLARK, #16337-074 *
Plaintiff,
v. * CIVIL ACTION NO. DKC-04-3148

STEPHEN DEWALT, WARDEN *
Defendant.

******

**MEMORANDUM**

I. *Procedural History*

Originally filed in the form of letter complaints, Plaintiff Michael A. Clark, a former U.S. Bureau of Prisons' ("BOP") inmate, alleges that while confined at the Federal Correctional Institution in Cumberland, Maryland ("FCI-Cumberland"), he was punched in the face by one of four other inmates when left unattended by correctional officers in an FCI-Cumberland Special Housing Unit ("SHU") recreation yard on September 24, 2004. Paper Nos. 1 & 2. Plaintiff claims that prior to the assault he had sent remedies or "cop-outs" to his unit team leader and to Correctional Officer Wilhelm which: (i) requested protective custody ("PC") status; and/or (ii) noted threats from inmate Joseph Williams. *Id*. He complains that these requests were ignored to by FCI-Cumberland personnel. Plaintiff further maintains that after he was assaulted his requests for ice and examination by medical staff went unanswered and he did not receive medical care until September 27, 2004.[1] Paper No. 2. In his court-ordered Amended Complaint for compensatory damages[2] and other miscellaneous relief, Plaintiff again claims that he was

---

1 In one letter, Plaintiff seemingly claims that after his release to a halfway house he did obtain x-rays from a Veteran's Affairs clinic and was provided a consult for surgery to repair a "blocked-off" left nostril. Paper No. 2.

2 Plaintiff later sought to amend his Complaint to increase the damage amount and to allege that: (i) he had filed a "cop-out" on September 4, 2004, requesting PC; and (ii) he was left unattended in the SHU courtyard recreation area with white gang members and inmate King . Paper No. 14. Plaintiff was

assaulted by inmate King in the recreation area after he was left alone by SHU correctional officers.[3] Paper No. 5.

On February 15, 2005, Defendants filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. Paper No. 21. Plaintiff filed an opposition on March 2, 2005. Paper No. 23. The Complaint and Motions are ready for this court's consideration. Oral hearing is deemed unnecessary. *See* Local Rule 105.6. (D. Md. 2004).

## II. *Standard of Review*

### *Motion to Dismiss*

A court reviewing a complaint in light of a Rule 12(b)(6) motion accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997). Such a motion ought not to be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court, however, need not accept unsupported legal conclusions or pleaded facts, *Revene v. Charles*

---

further allowed to amend his Complaint to include copies of the alleged "cop-out" which sought PC custody status in light of inmate Joseph Williams's connection to the white gang, also known as "Pecker Woods." *See* Paper Nos. 15 & 16. On December 30, 2004, Plaintiff filed an additional document which further alleged that on September 27, 2004, an SHU correctional officer informed him that if he reported the September 24 assault, Plaintiff would not be allowed to transfer from FCI-Cumberland to a halfway house for another sixty days. Paper No. 17.

[3] The Amended Complaint, which was construed as alleging violations of Plaintiff's Eighth Amendment rights based upon Defendant's failure to protect him while incarcerated and failure to provide adequate medical care for injuries sustained due to that lack of protection, also raised claims concerning the general denial of medical care and accommodation for Plaintiff's disability while confined in the SHU at FCI-Cumberland; the release of information contained in a confidential letter; and tampering with court documents and administrative remedies. As these allegations were the subject of Plaintiff's other 28 U.S.C. § 1331 complaint, the claims were dismissed without prejudice. *See* Paper No. 8, n.3.

*County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), or conclusory factual allegations devoid of any reference to particular acts or practices. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

*Motion for Summary Judgment*

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

*Eighth Amendment*

To meet the constitutional Eighth Amendment standard for establishing a failure-to-protect claim, a prisoner must project evidence that a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997) In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions (or

inactions) of the defendant amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Objectively, the prisoner plaintiff must prove that he was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available.[4] *Farmer v. Brennan*, 511 U.S. at 837.

III. *Analysis*

Defendant asserts that the Complaint is subject to dismissal due to Plaintiff's failure to: (i) exhaust administrative remedies; (ii) allege Defendant Dewalt's personal involvement; (iii) show culpability under a respondeat superior theory; and (iv) establish Eighth Amendment violations. Paper No. 21.

In his opposition response Plaintiff states that he had difficulties receiving administrative remedy forms and that his grievances were delayed, withheld, unanswered, unnumbered, and not recorded. Paper No. 23. He claims that he requested PC from the gang of "Pecker Woods" but could not specifically identify who would carry out the assault. Paper No. 23. Plaintiff states that he identified inmate King as his assailant from a photo array provided by Lt. Vandiver on September 27, 2004. *Id*. He continues to maintain that all four SHU officers walked off his immediate SHU recreation area while escorting other

---

4 The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839– 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d at 340. "Actual knowledge or awareness on the part of the alleged inflicter.... becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), *quoting Farmer*, 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2001); *citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

inmates in the recreation cage next to him. *Id*. He further claims that during the morning of September 24, 2004, he pushed the emergency button in his cell three times to request ice and medical attention. *Id*. Plaintiff, who was scheduled for a transfer to a half-way house on September 27, 2004, states that because Lt. Lancaster told him he would be held in the SHU for another 60 days if he reported the assault, he decided to keep his mouth shut.[5] *Id*. Plaintiff claims that he now needs surgical repair due to a nasal blockage caused by the punch to the face. *Id*.

The questions and issues before this court are straightforward. The undersigned shall examine: (i) what, if any, communications were made by Plaintiff regarding his safety and medical concerns prior to and after the alleged September, 2004 assault; (ii) what particularized information was made in these communications; (iii) who received these communications; and (iv) what, if any, action was taken in response.

The record shows that on July 10, 2003, Plaintiff was admitted to FCI-Cumberland's Satellite Prison Camp to participate in the Residential Drug Abuse Program ("RDAP"). Paper No. 21, Ex. 1 at Attachments A-C. On April 8, 2004, he was moved to administrative detention in the Special Housing Unit ("SHU") as a result of an investigation into his violation of BOP regulations. *Id*. He was moved to C-Unit in the main institution at FCI-Cumberland on June 17, 2004, and remained on C-Unit through August 5, 2004. *Id*. From August 5 to August 12, 2004, he was again admitted to administrative detention. From August 12 through August 27, 2004, Plaintiff was housed in the C-Unit. On August 27, 2004, he was again admitted to administrative detention, where he remained until the date of his transfer from the

---

[5] Plaintiff is not raising a claim of constitutional retaliation. Rather, he is alleging that had he officially reported the assault by inmate King, he would have had to remain at FCI-Cumberland until completion of the administrative and/or disciplinary review process.

institution to a halfway house on September 27, 2004. Paper No. 21, Ex. 1 at Gottleib Decl. & Attachments.

According to Defendant's verified materials and declarations, Plaintiff and other inmates were observed by SHU Recreation Officer McQuade during the entire recreation period on September 24, 2004, and during that time, no inmate was observed having an altercation with any other inmate.[6] *Id*., Ex. 2 at McQuade Decl. Declarant McQuade states that at the conclusion of the recreation period he handcuffed Plaintiff and engaged him in conversation about Plaintiff's release, which was scheduled for the following Monday, September 27, 2004. *Id*. Officer McQuade indicates that while conversing with Plaintiff he observed no marks on Plaintiff's face. *Id*.

Soon after Plaintiff was placed back in his cell from recreation, he complained to staff that he had been assaulted in the recreation yard. *Id*., Ex. 2 at McQuade Decl. & Attach. A. Officer McQuade asked another FCI-Cumberland staff member to see Plaintiff, and McQuade asserts that the staff member also saw no visible signs of marks or abrasions consistent with an assault. *Id*., Ex. 2 at McQuade Decl. In his declaration, Physician's Assistant Gerard Forster affirms that Plaintiff did not present any claim of injury arising out of the alleged September 24, 2004 assault to medical staff during their twice-daily rounds of the FCI-Cumberland SHU. *Id*., Ex. 4 at Forster Decl.

---

6 According to Officer McQuade, there are four separate caged recreation areas attached to the FCI-Cumberland's SHU Unit. Paper No. 21, Ex. 2 at McQuade Decl. The SHU capacity consists of 72 cells, with a total capacity of 144 inmates. *Id*. SHU inmates are provided one hour of outside recreation per day, if desired. *Id*. Prior to being released into a recreation cage, each inmate in SHU must be handcuffed while in the cell. *Id*. The handcuffs are removed while the inmate recreates inside the caged recreation area *Id*.

According to verified materials, Plaintiff exhibited a bruised, swollen eye at the time he departed FCI-Cumberland on September 27, 2004. According to the declarations of the investigative officers, he provided inconsistent statements when questioned. Paper No. 21, Exs. 3, 4 & 6 at Forster, Vandiver, and Williams's Decls. Defendant states that Plaintiff originally indicated to Lt. Vandiver that he sustained the injury when he fell out of bed.[7] *Id*., Ex. 3 at Vandiver Decl. He did, however, acknowledge that he had been recently assaulted by inmate King. *Id*. When the bruised eye was noticed on September 27, 2004, Health Services staff was immediately summoned. *Id*. A medical evaluation indicated a small contusion underneath the left eye and no need for any treatment. *Id*., Ex. 4 at Forster Decl. The examination did not indicate any nasal injury, nor did Plaintiff complain of any nasal injury. *Id*., Exs. 3 & 4 at Vandiver and Forster Decls.; Ex. 4, Attachment B.

Defendant maintains that Health Services makes daily rounds in SHU. According to Defendant's materials, at no point in time, on either the alleged date of the incident on September 24, 2004, or in the days prior to September 27, 2004, when he was released from FCI-Cumberland, did Plaintiff make a request for medical attention during these rounds. *Id*., Ex. 4 at Forster Decl. Warden Dewalt further alleges that Plaintiff did not express discomfort or consult with the Unit Manager or Unit staff. *Id*., Ex. 5 at Stevens's Decl.

Defendant claims that Plaintiff did not express fear of any other prisoner during the time he was housed in the SHU.[8] *Id*., Exs. 3, 5, & 6 at Vandiver, Stevens, and Williams's Decl. He states that Plaintiff

---

7 Plaintiff denies making such a statement.

8 The administrative remedy abstracts provided by Defendant show that Plaintiff filed remedies concerning his disciplinary hearing appeal, mental health diagnosis, inappropriate inmate and staff conduct regarding food services, medical housing and medication, and release upon completion of RDAP. Paper No.

did, however, submit other complaints concerning FCI-Cumberland staff actions. *Id.*, Exs. 3 & 5 at Vandiver and Stevens's Decl.

The record shows that at the time of the alleged incident Plaintiff had been placed on "keep-away" status from two inmates, Williams and Clay,[9] and was housed in the SHU administration detention unit in a single cell. Paper No. 21, Exs. 2 & 3 at McQuade & Vandiver Decls. Plaintiff's alleged assailant, inmate King, was also housed in the SHU Unit from September 11, 2004, through December 13, 2004. *Id*., Ex. 1 at Gottleib Decl. Defendant argues that Plaintiff would have had at least 13 days, from September 11 through September 24, 2004, to report to staff any difficulty or threat that he had felt from inmate King. He did not do so. *Id*., Ex. 6 at Williams's Decl.

In response to the hand-written September, 2004 "cop-out" attachments presented to this Court by Plaintiff (*see* Paper Nos. 14-16), Defendant asserts that while Plaintiff may have requested PC and complained of inmate Joseph Williams and the "Pecker Woods" gang, Plaintiff's missives did not specify any connection between Williams and King, his alleged assailant. *Id*., Exs. 2, 3, & 5 at Stevens, McQuade, and Vandiver Decls. Further, the Warden maintains that staff investigated Plaintiff's allegations and found nothing to substantiate the existence of any "Pecker Woods" gang. *Id.*, Exs. 3, 6, & 7 at Vandiver, Williams, & Dewalt Decls.

---

21, Ex. 1 at Attachment D.

[9] According to the materials, some months earlier Plaintiff was involved in a verbal altercation with inmates Williams and Clay. Paper No. 21, Ex. 5 at Stevens's Decl. All three prisoners were charged with institutional infractions, sent to SHU pending investigation, and classified as "keep-aways" from each other. *Id*.

Defendant states that staff had no indication that Plaintiff would be in danger from inmate King as Plaintiff never expressed his fear of King. *Id*., Exs. 3, 5 & 6 at Vandiver, Stevens, & Williams Decls. He personally affirms that Plaintiff's concerns were investigated on each occasion and could not be substantiated. *Id*., Ex. 7, Dewalt Decl.

Plaintiff has been challenged to come forward with rebuttal materials and affidavits which demonstrate that Defendant was deliberately indifferent to his safety and medical problems. He has failed to project evidence, i.e., verified documents, affidavits, or declarations, to establish that Warden Dewalt or other FCI-Cumberland staff deprived him of his Eighth Amendment right to protection and medical care.

First, where, as here, Plaintiff is alleging that a supervisory official is liable, he must show that the official was personally involved in the deprivation of his rights or that he was constructively aware of the alleged unconstitutional behavior and, in effect, tacitly authorized the action. *Carter v. Unknown Agents of the City of Danville Police Dep't*., 164 F. 3d 215, 220-21 (4th Cir. 1999); *Shaw v. Stroud*, 13 F.3d 791, 798-800 (4th Cir. 1994). Plaintiff has not proven his case by establishing Dewalt's personal involvement in or knowledge of the alleged unconstitutional acts. Moreover, the record casts doubt on Plaintiff's claims.

There is no argument that on September 24, 2004, soon after he was placed back in his cell from recreation, Plaintiff complained that he had been assaulted in the recreation cage. No visible injuries were noted. Likewise, there is no dispute that immediately prior to his September 27, 2004 transfer out of FCI-Cumberland, Plaintiff displayed an injury to his left eye, which could have been illustrative of an assault. He acknowledged that he had been punched in the eye by inmate King the preceding Friday, September 24, 2004, and indicated that staff had been made aware of it.

There is no disagreement that Plaintiff submitted reams of complaints, missives, and grievances to FCI-Cumberland staff prior to the alleged incident. Defendant apparently does not dispute that at least one or two of those documents related to issues of placement on PC security and directly concerned inmate Joseph Williams and an alleged "Pecker Woods" gang. Warden Dewalt correctly notes, however, that these documents never identify inmate King as a enemy. Declarations presented to the Court maintain that an investigation into Plaintiff's claim of a "Pecker Woods" gang was found to be unsubstantiated, and that Plaintiff remained isolated in the SHU, single-celled, with a "keep-away" notice in his file as to inmate Williams. Plaintiff, who knew he was scheduled for a transfer out of FCI-Cumberland three days later, plainly had the option of remaining in his cell and not entering the recreation area if he perceived a threat to his safety. The record also reveals that Plaintiff did not notify health care personnel of his medical needs during their rounds on SHU, nor did he complain about his injuries to FCI-Cumberland staff either verbally or in writing during the period of September 24 to September 27, 2004. Based upon the verified record and declarations presented by Defendant, the Court concludes that no Eighth Amendment violation has been established.

IV. *Conclusion*

For the aforementioned reasons, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, construed as a Motion for Summary Judgment, is hereby granted. Judgment is entered in favor of Defendant and against Plaintiff. A separate Order follows.

Date: 8/9/05

/s/
DEBORAH K. CHASANOW
United States District Judge